UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Matthew Gabriel, f/k/a          :
Matta Ghobreyal,                :
                                :
          Plaintiff,            :
                                :
     v.                         :     Case No. 2:12-cv-14
                                :
Albany College of Pharmacy      :
and Health Sciences –           :
Vermont Campus (ACPHS),         :
Professor Dorothy Pumo,         :
Ronald A. DeBellis, Dean        :
Robert Hamilton, Assistant      :
Professor Joanna Schwartz,      :
Jason Long, Melissa Long,       :
President Dr. James J.          :
Gozzo, Associate Dean John      :
Denio, Dr. Peter J.             :
Cornish, Professor Gail         :
Goodman Snitkoff,               :
Professor Stefan Balaz,         :
Gerald Katzman,                 :
Accreditation Council of        :
Pharmacy Education (ACPE),      :
Peter H. Vlasses,               :
Lindsay M. Antikainen,          :
                                :
          Defendants.           :

OPINION AND ORDER
(Docs. 30, 34 and 47)

While a student at the Vermont campus of the Albany
College of Pharmacy and Health Sciences ("ACPHS" or
"College"), *pro se* plaintiff Matthew Gabriel was accused of
plagiarism by one of his professors.  Gabriel now brings
this action, *pro se*, claiming that the accusation and

resulting punishment were discriminatory.  He also claims that Defendants' conduct constituted breach of contract.

There are sixteen Defendants in this case, including ACPHS itself, ACPHS administrators, professors and students, and the College's General Counsel ("ACPHS Defendants"). Gabriel also brings claims against the Accreditation Council for Pharmacy Education ("ACPE"), its Executive Director and Accreditation Facilitator ("ACPE Defendants").

The ACPHS Defendants have moved to dismiss, arguing first that Gabriel has failed to comply with the pleading requirements of Fed. R. Civ. P. 8.  They further contend that the Court lacks subject matter jurisdiction, and that Gabriel has failed to state a plausible claim for relief. The ACPE Defendants have also moved to dismiss for failure to state a claim.  For the reasons set forth below, the motions to dismiss are GRANTED, and Gabriel is granted leave to amend his discrimination claims.

Factual Background

In the fall of 2009, Gabriel was a full-time student at the ACPHS Vermont campus.  The Vermont campus is a satellite of ACPHS's primary campus in Albany, New York.  One of Gabriel's classes, Immunology, was taught by Professor

Dorothy Pumo.  On October 19, 2009, Professor Pumo assigned a 450-word report based upon a lecture by Professor Gail Goodman Snitkoff.  Professor Snitkoff's lecture was presented live at the Albany campus, and via video at the Vermont campus.

Gabriel claims that one of his fellow students asked Professor Pumo "about using material from internet sources and the correct citation required" for the writing assignment.  (Doc. 3 at 3.)  Professor Pumo allegedly told the class "not to worry about it because Professor Snitkoff did not mention this," and that "there was not enough space to include citations in a 450 word report."  *Id.*

After the students submitted their reports, Professor Pumo checked the reports for plagiarism using a program called Turnitin.  According to the Amended Complaint, she then informed the class:

> I read through the [T]urnitin report, I have not finished all of them, and I am <u>distressed</u> part of that [sic] <u>is a large number of you seemingly copied full sentences from other works.</u>  I am getting a lot of matches to extraneous papers from other places.  I am in no <u>mood</u> to report the entire class for plagiarism; that said I will do it if I have to.  So I am giving everybody, well most people anyway <u>a free pass</u> on one sentence copied for this paper.  <u>I am not going to write up</u> everybody for copying one sentence.

3

*Id.* at 5 (emphases in original).

Professor Pumo later reported Gabriel for plagiarism. When Gabriel asked whether other students had plagiarized as well, Professor Pumo allegedly confirmed that they had, but to a lesser degree.  Gabriel claims he offered to re-write the assignment, and that although Professor Pumo said she would consider this alternative, she did not communicate with him again prior to reporting him to ACPHS Dean Ronald DeBellis.

Gabriel refers to Professor Pumo's allowance of limited plagiarism as the "'free pass' phenomenon," and claims that the practice was unlawful.  Specifically, he contends that the class syllabus was a contract between Pumo and her students, yet the syllabus made no mention of the "'free pass' phenomenon."  He therefore argues that the award of "free passes" constituted a breach of that contract. Gabriel also claims that he was denied a "free pass" because he is Egyptian American and a "Coptic Christian."  *Id.* at 7.

Gabriel contends that two other incidents with Professor Pumo support his discrimination claim.  First, he alleges that prior to the plagiarism incident, Pumo "inhibited the Plaintiff from using the bathroom during exam

4

[sic] . . . and allowed everybody else in the class to use it." *Id.* at 6.  Second, he claims that when one of his exam times conflicted with his citizenship ceremony, Professor Pumo initially refused to offer him a makeup date.  Although a makeup date was ultimately set, Gabriel contends that it resulted in his having two exams on the same day, and that after the second exam he required medical treatment for a severe tension headache.

The plagiarism charge was considered by the College's Honor Code Review Committee ("Committee"), comprised of ACPHS students, professors, and administrators.  In a letter delivered to Gabriel by Dean DeBellis, the Committee informed Gabriel of its conclusion that he had, in fact, committed plagiarism, and that he would receive a failing grade for the writing assignment.  Gabriel also reports having had an informal meeting with committee member Jason Long, and a formal meeting with Professor Joanna Schwartz. During both meetings, he was allegedly advised to accept his punishment.

Gabriel claims that in its handling of the plagiarism charge, ACPHS violated its own Honor Code in several respects.  The alleged violations included: failure by

5

Professor Pumo to submit the allegation to the "Honor Code Box" or in person to an Honor Code Faculty Co-Advisor; failure to provide Gabriel with written notice of the charges; failure to make an effort to mediate the issue; failure to provide Gabriel with an advisor; failure to provide a hearing; and failure to notify Gabriel of his right to appeal the Committee's decision. *Id.* at 24-27.

Gabriel contends that the Honor Code, like the course syllabus, constituted a contract between the college and its students, and that Defendants breached that contract by allowing Professor Pumo's "free pass" policy.[1] He also claims that if he had been granted "the opportunity as an Egyptian American Citizen to explain the situation, plaintiff believes he would not have received a failing grade and, more important, would not have suffered the psychological and emotional distress and physical illness, which plaintiff experienced thereafter." *Id.* at 19.

In November 2009, shortly after receiving the

---

[1] The fact that Gabriel is bring a breach of contract claim based upon alleged procedural violations is most clearly set forth in his opposition to the ACPHS Defendants' motion to dismiss. (Doc. 42 at 2,11, 14-15.) A court may consider such additional submissions by the Plaintiff in an effort to clarify the scope of his allegations. *See, e.g., Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002) (citing cases).

Committee's ruling, Gabriel requested and was granted a
medical leave from school.  The request was supported by a
letter from Dr. Richard Ober, a consulting psychologist.
Dr. Ober reported that Gabriel had "referred himself to this
office for the treatment of a range of confusing emotional
responses to his circumstances."  (Doc. 1-3 at 2.)  Dr. Ober
further opined that "[d]ue to a number of factors in his
life," Gabriel was affected by "significant levels of
stress" that had resulted in anxiety, problems with sleep
and concentration, an "inability to enjoy normal activities,
appetite disturbance and consequent weight loss, worry,
decreased energy, gastrointestinal disturbance and feelings
of sadness and loss."  *Id.*  Dr. Ober's letter stated that
"[t]hese effects are coincidental with beginning the program
at [ACPHS]," that medications had not been effective, and
that he therefore supported Gabriel's request for a medical
leave.  *Id.*

Gabriel explains that his withdrawal from ACPHS was
precipitated by his "discriminatory treatment and the
prejudice the plaintiff was subjected to by [ACPHS] in
general and from Dr. Pumo in particular . . . ."  Gabriel
further claims that the situation was "aggravat[ed]" by his

treatment by Dean DeBellis, who allegedly "yell[ed] and scream[ed]" at Gabriel during meetings regarding the plagiarism accusation.

The Amended Complaint reports that Gabriel was ultimately informed by ACPHS officials – specifically, Dean DeBellis and Director of Counseling Services Dr. Peter Cornish – that the allegation of plagiarism was being withdrawn and that, as a result, there would be "nothing in [Gabriel's] file." (Doc. 3 at 22.)  When Gabriel requested a letter of confirmation, Dean DeBellis allegedly declined, explaining that "nothing took place, nothing happened, there is nothing to be in writing . . . .  We need to put this to bed[,] it is over . . . ." *Id.*

Because of his experience at the Vermont campus, Gabriel asked to be transferred to the Albany campus.  At first, he did not receive any response from either Dean DeBellis or Dr. Cornish about his request.  He later called Dean DeBellis, who allegedly denied the request without explanation.  A second request was denied by Dean DeBellis by letter, again without explanation.  (Doc. 1-26 at 2.) Gabriel reports that he has since "decided not to go to Vermont again and plaintiff has enrolled in a different

school to complete my pharmacy studies which has cost me time and money." (Doc. 3 at 25.)

On August 20, 2010, Gabriel complained to ACPE and ACPHS officials about how he had been treated. The ACPE response, authored by Defendant Lindsay Antikainen, informed Gabriel that "[a]fter our review of your complaint along with the information provided to us by the Dean of the College of Pharmacy, it was determined that no accreditation standards have been violated in this instance." (Doc. 1-33 at 2.) Gabriel contends that several accreditation standards were, in fact, violated. He also alleges that ACPE accredited the Vermont campus prematurely, a result of which was the lack of certain technological resources and a campus writing center. Gabriel claims that if a writing center had been available, his writing assignment could have been reviewed prior to its submission to Professor Pumo.

Gabriel is seeking damages in the amount of $1,135,330. Of this amount, the majority is to compensate for alleged psychological harm. Other claimed damages include the tuition paid to ACPHS, ACPHS fees, living expenses, and $100,000 in lost wages. Aside from the amounts sought for psychological harm and lost wages, Gabriel's total claimed

9

damages amount to approximately $35,000.

Gabriel brings his claims under "Title VII of the Civil Rights Act of 1964, as amended, and the applicable laws of the State of Vermont." (Doc. 3 at 36.) Gabriel previously filed a similar lawsuit in the United District Court for the District of Massachusetts. That Complaint was dismissed for improper venue. (Doc. 33-7.) In its order of dismissal, the court also concluded that Gabriel's Title VII claim was "not viable as a matter of law" because he did not claim to be an employee of the College. *Id.* at 2 n.3.

<u>Discussion</u>

I.   <u>ACPHS Defendants' Motion to Dismiss</u>

A.   Legal Standards

The ACPHS Defendants have moved to dismiss Gabriel's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. They also argue that Gabriel has failed to comply with the pleading requirements of Fed. R. Civ. P. 8.

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable

inferences in the plaintiff's favor.  *Famous Horse Inc. v. 5th Ave. Photo Inc*., 624 F.3d 106, 108 (2d Cir. 2010). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Rule 12(b)(1) provides for dismissal of a complaint due

11

to a lack of subject matter jurisdiction.  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

B.   Discrimination Claim

The Amended Complaint alleges that the ACPHS Defendants are liable for "discriminating against [Gabriel] because [his] national origin of being a Coptic Christian from Egypt, in violation of Title VII of the Civil Rights Act of 1964, as amended . . . ."  (Doc. 3 at 35-36.)  To the extent Gabriel is bringing his Title VII claim against the individual defendants, his claim is misplaced, as the Second Circuit has held that Title VII does not apply to individuals.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314-15 (2d Cir. 1995).

In addition, Title VII makes it unlawful for employers to discriminate against employees.  *See Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 382 (2d Cir. 2006); 42

12

U.S.C. § 2000e-2(a)(2).  It does not apply to a student's claim that he was discriminated against by either his college or a non-employer third party.  *See Bucklen v. Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721, 726 (N.D.N.Y. 2001)(dismissing Title VII claim where plaintiff claimed discrimination against him in his role as a student); *Pell v. Trustees of Columbia Univ.*, 1998 WL 19989, at *9 (S.D.N.Y. Jan. 21, 1998) (dismissing Title VII claim because "plaintiff was a student at Columbia University, not an employee"); *Stilley v. Univ. of Pittsburgh*, 968 F. Supp. 252, 261 (W.D. Pa. 1996).  Because the ACPHS Defendants in this case were not Gabriel's employers, his Title VII claim cannot stand.

The Court acknowledges, however, that it must read Gabriel's *pro se* pleadings with "special solicitude" and interpret his claims as raising "the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).  Gabriel claims that he was the victim of discrimination on the basis of his religion and the fact that he is Egyptian-American. Accordingly, he may be trying to raise civil rights claims under federal statutes other than Title VII, such as Title

13

VI of the Civil Rights Act of 1964, or 42 U.S.C. § 1981.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Section 1981 provides, *inter alia*, that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).[2]  In order to establish a claim based on either statute, Gabriel must show that a defendant (1) discriminated against him on the basis of race, (2) that the discrimination was intentional, and (3) that the discrimination was a substantial or motivating factor for the defendant's actions.  *See Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) (citations and internal quotation marks omitted).

_____

[2] Section 1981 "applies to private as well as state actors, including independent academic institutions."  *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994).  Title VI applies to private suits against private recipients of federal funds.  *Cannon v. Univ. of Chicago*, 441 U.S. 677, 711 n.48 (1979).  The Court will assume for present purposes that ACPHS is the recipient of federal funds.

Gabriel claims that he was punished for plagiarism while others in Professor Pumo's class were not.  He also contends that, unlike others, he was denied access to the bathroom during an exam, and that Professor Pumo resisted rescheduling an exam that conflicted with his citizenship ceremony.  His discrimination claims against the remaining Defendants are less specific, although he does allege that his request for a transfer to the ACPHS Albany Campus was denied without explanation because "Plaintiff is Egyptian American and has no value to them . . . ."  (Doc. 3 at 29 n.9)

Pursuant to the legal standards set forth above, the Amended Complaint must allow the Court to reasonably infer that Gabriel was treated differently from others due to unlawful and intentional discrimination.  *See Iqbal*, 556 U.S. at 678.  In a civil rights action, that inference must be supported by allegations of specific facts indicating a deprivation of rights.  *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988); *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) ("It is well settled in this Circuit that a complaint consisting of nothing more than

naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)."). Moreover, in assessing the plausibility of Gabriel's claims, the Court is mindful that it may consider whether more likely or alternative explanations for the alleged conduct exist. *Iqbal*, 556 U.S. at 681.

In this case, an obvious alternative explanation for the ACPHS Defendants' alleged conduct is that Gabriel made significant use of un-cited materials in violation of the college's Honor Code.[3] Gabriel does not specifically

---

[3] Defendants have submitted the Turnitin report for the Court's consideration. The report allegedly shows that a substantial portion of Gabriel's assignment was copied from other sources. Although the Turnitin report was not submitted with either the Complaint or the Amended Complaint, Defendants ask the Court to consider it as integral to Gabriel's pleadings. (Doc. 33 at 4 n.5.)

When considering a Rule 12(b)(6) motion, a district court's review of the factual record is generally limited to the facts and allegations that are contained in the complaint and to any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits. *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The court may also review documents that are not a part of the complaint, but are nonetheless "integral to the complaint." *Cortec. Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A document is "integral to the complaint" where "the complaint relies heavily upon its terms and effect." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *see also, e.g., Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (where a complaint relies on the terms of a contract, the court may look to the agreement itself on a motion to dismiss).

In this instance, the Turnitin report is not so integral to Gabriel's claims that he felt the need to rely "heavily upon its terms and effect" in drafting his Complaint. *Id.* Indeed, its primary

dispute using un-cited materials, although he notes that he never admitted to plagiarism.  He also contends that he "did the assignment to the best of his knowledge according to the limited information provided by defendant Professor Pumo on how to do the assignment."  (Doc. 42 at 9.)

There is little in the Amended Complaint, beyond Gabriel's repeated references to his Egyptian heritage and his choice of religion, to suggest intentional discrimination.  While direct evidence of discrimination is not required, a pleading must nonetheless allege "circumstances giving rise to a plausible inference of racially discriminatory intent."  *Yusuf*, 35 F.3d at 713.  Beyond Gabriel's repeated assertions that he was the victim of discrimination, the pleadings in this case give no support for such an inference.

What little circumstantial evidence Gabriel submits is insufficient to set forth a plausible discrimination claim.  Denial of a bathroom break during an exam may have been harsh, but it did not constitute actionable discrimination,

---

significance appears to be in support of the ACPHS Defendants' claim that Gabriel committed plagiarism.  The Court therefore declines to review or consider the specific contents of the Turnitin report at this time.

and provides scant support for a broader claim.  *See, e.g.*, *Hamilton v. City College of City Univ. of New York*, 173 F. Supp. 2d 181, 185 (S.D.N.Y. 2001) (denial of calculator during exam was insufficient to support claim that professor had violated plaintiff's Constitutional rights).  Similarly, reluctance to re-schedule an exam, followed by the professor's agreement to assign a new date, does not create an inference of intentional discrimination.  Finally, punishment for alleged plagiarism when lesser violators escaped sanction does not, without additional supporting facts, suggest discriminatory intent.

In sum, the Amended Complaint and its many exhibits do not support a plausible claim that Gabriel was mistreated because of either his national origin or his religion.  The ACPHS Defendants' motion to dismiss Gabriel's discrimination claim is therefore GRANTED.

C.   Leave to Amend

In addition to the requirement that *pro se* pleadings be liberally construed, the Second Circuit has held that district courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  In

this case, Gabriel may be in possession of additional facts that would give rise to a plausible claim of discrimination. *Iqbal*, 556 U.S. at 678.  The Court will therefore allow him thirty days in which to file a Second Amended Complaint in which he must set forth both the legal and factual bases for his discrimination claims against the ACPHS Defendants.

D.  Breach of Contract Claims

Gabriel also asserts two contract claims against the ACPHS Defendants.[4]  He first contends that the syllabus for his Immunology class was a contract.  More specifically, he claims that the syllabus failed to reference a "free pass" policy permitting limited plagiarism, and that by implementing such a policy orally, Professor Pumo breached her contract with the class.

The court finds no legal support for treating a course syllabus as a contract.  The few courts that have considered the issue have concluded that a syllabus does not constitute a contract.  *See, e.g., Yarcheski v. Univ. of Medicine and*

_____

[4] Because the Court is granting Gabriel leave to amend his discrimination claim, the Court retains supplemental jurisdiction over the state law contract claims.  *See* 28 U.S.C. § 1367(a).  The Court therefore declines to consider at this time whether Gabriel's damages claims show "a reasonable probability that the [damages] claim is in excess of the statutory jurisdictional amount" for diversity jurisdiction.  *Tongkook Am., Inc. v. Shipton Sportwear, Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (citation and internal quotation omitted).

*Dentistry of New Jersey*, 2008 WL 5133687, *4 (N.J. Super.
Dec. 9, 2008) (affirming lower court's ruling that course
syllabus did not constitute legally enforceable contract);
*Collins v. Grier*, 1983 WL 5148, at *2 (Ohio. App. July 27,
1983) ("there is no contract between a professor or
instructor and a student created by the syllabus or
university guidelines").  Indeed, a valid contract requires
several elements, including mutual agreement and valuable
consideration.  *See, e.g., Manley Bros. v. Bush*, 169 A. 782,
783 (Vt. 1934).  A course syllabus – which commonly outlines
reading requirements, test dates and the like – does not
have any such attributes.  Gabriel's breach of contract
claim based upon the course syllabus is therefore DISMISSED.

Gabriel's second contract claim is that the College
failed to adhere to the terms of its Honor Code.  The ACPHS
Defendants first argue that such a contract would only be
between Gabriel and the College, and that the individual
ACPHS Defendants would have no liability.  (Doc. 33 at 16-17
n.15) (citing *Guckenberger v. Boston Univ.*, 957 F. Supp.
306, 324 (D. Mass. 1997) (holding that chancellor and
president's assistant could not be held liable for
university's alleged breach of contract because, under state

law, officer is generally not liable for corporation's breach)).  The Court agrees, as Gabriel cannot show that the Honor Code was a contract between himself and the individual ACPHS Defendants.  *See Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 219 (E.D.N.Y. 1999) (holding that contract existed between plaintiff and university on the basis of "bulletins and other materials" but dismissing contract claims against individual defendants); *Bisong v. Univ. of Houston*, 2006 WL 2414410, at *3 (S.D. Tex. Aug. 18, 2006) (dismissing individual defendants from breach of contract claim based upon student handbook); *see also Costa v. Katsanos*, 664 A.2d 251, 252 (Vt. 1995) (corporate officers are not liable for corporation's contract unless contract specifies such liability).

With respect to the College, however, courts have generally recognized a contractual relationship between a school and its students.  Indeed, this Court has recognized that "[t]he terms of the contract [between a school and its students] are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution."  *Merrow v. Goldberg*, 672 F. Supp. 766, 774 (D. Vt. 1987); *see also Mangla v. Brown*

*Univ.*, 135 F.3d 80, 83 (1st Cir. 1998); *Fellheimer v.*
*Middlebury Coll.*, 869 F. Supp. 238, 242 (D. Vt. 1994). In
*Fellheimer*, the Court specifically found that with respect
to disciplinary procedures set forth in a student handbook,
"the College has an obligation to conduct its hearings in a
manner consistent with the terms of the Handbook and that a
student has a cause of action if he or she can prove that
the College deviated from the established procedures." 869
F. Supp. at 242.[5] *Fellheimer* also allowed that a school
could "breach its obligation to students only by deviating
from its own procedures in such a way that the disciplinary
action at issue is fundamentally unfair, arbitrary or
capricious . . . . [T]he vast majority of College
disciplinary procedures will satisfy this standard, and it
is against this standard that [] the plaintiff's claims of
breach of contract must be evaluated." 869 F. Supp. at 244.

---

[5] The ACPHS Honor Code was attached as an appendix to the Student
Handbook. The Court considers the Honor Code as integral to the
Amended Complaint, as its terms form the basis of Gabriel's breach of
contract claim. Furthermore, it has been held that a student handbook
may be incorporated into a complaint, and that such incorporation does
not require conversion to a motion for summary judgment. *Goodman v.*
*President and Trustees of Bowdoin College*, 135 F. Supp. 2d 40, 47 (D.
Me. 2001).

Accepting Gabriel's allegations as true, the College did not adhere to several provisions within the Honor Code, including the mediation and hearing requirements. Gabriel claims that if the College had followed the process required under the Honor Code, he would not have been sanctioned with a failing grade and, "more important, would not have suffered the psychological and emotional distress and physical illness, which plaintiff experienced thereafter." (Doc. 3 at 19.)

A fundamental flaw in Gabriel's contract claim is that the plagiarism charge was ultimately withdrawn, and Gabriel was welcomed to return to school with a clean record. According to the Amended Complaint, any record of the plagiarism charge was expunged, and the College was willing to accept Gabriel back as though "nothing happened." Consequently, any errors in the Committee's procedure, including the alleged failure to provide a hearing, were harmless.

Furthermore, with respect to Gabriel's claims of compensable physical and emotional harm, Vermont law allows only two types of damages for breach of contract: "direct damages that naturally and usually flow from the breach

23

itself, and special or consequential damages, which must pass the tests of causation, certainty and foreseeability." *Smith v. Country Village Intern., Inc.*, 944 A.2d 240, 243-44 (Vt. 2007); *see also A. Brown, Inc. v. Vt. Justin Corp.*, 531 A.2d 899, 901-02 (Vt. 1987) (direct damages from breach of contract must naturally flow from breach itself, consequential damages must have been within specific contemplation of parties). The Restatement (Second) of Contracts further notes that contract damages are intended to place the injured party in the same position as he "would have been had the contract been performed," Restatement (Second) of Contracts § 347, comment (a) (1981), and that "[d]amages for emotional disturbance are not ordinarily allowed" aside from exceptional cases, such as where "the disturbance accompanies a bodily injury," or "serious emotional disturbance was a particularly likely result." *Id.* § 353, comment (a); *see also McGee Constr. Co v. Neshobe Development, Inc.*, 594 A.2d 415, 419 (1991)(citing Restatement (Second) of Contracts § 347)).

Here, Gabriel claims that if he had been provided a hearing, he could have explained his situation and avoided a sanction. By rescinding the sanction, the College placed

Gabriel in the same position as he arguably have would been
"had the contract been performed." *Id.* § 347, comment (a).
Moreover, the damages sought by Gabriel as a result of the
Committee's initially minor, and ultimately non-existent,
sanction could not have been foreseeable.  Nor would they
have been within the contemplation of the contracting
parties.

The Court also acknowledges the Honor Code's
"Deviation" provision, which states that "[d]eviation from
the above procedures will not invalidate a decision or
proceeding unless it causes significant prejudice to the
accused student, which the student must bring to the
attention of the applicable panel, committee or board member
upon belief that such prejudice occurred." (Doc. 33-3 at
8.)  Here, Gabriel cannot argue that he suffered significant
prejudice, either from the Committee's decision to issue a
failing grade on an assignment or, more significantly, from
a sanction that was ultimately withdrawn.  Nor is there any
indication in the record that Gabriel notified the panel of
his belief that prejudice had occurred.  The breach of
contract claim against the ACPHS Defendants is therefore
DISMISSED.

II.  <u>ACPE Defendants' Motion to Dismiss</u>

The ACPE Defendants have also moved to dismiss under
Rule 12(b)(6).  The claims against the ACPE Defendants are:
(1) that ACPE accredited the Vermont Campus prematurely,
such that "the Vermont Campus technological facilities and
writing lab were nonexistent" and students "were left
without valuable information and guidance"; and (2) that
ACPE's conclusion that "no accreditation standards have been
violated" was "unfavorable and unjust[ly] discriminatory."
(Doc. 3 at 31-32.)  As with the ACPHS Defendants, the claims
being brought against the ACPE Defendants consist of a
discrimination claim under Title VII, and a state law claim
of breach of contract.

A.   Discrimination Claim

For reasons set forth above, Gabriel's Title VII claim
is misplaced, as there is no allegation that he was ever an
ACPE employee.  *See, e.g., Gulino*, 460 F.3d at 382; *Bucklen*,
166 F. Supp. at 726.  Although the Court will again construe
the Amended Complaint liberally and consider other legal
bases for a discrimination claim, Gabriel's claims of
discrimination by ACPE and its employees are entirely
conclusory.

Specifically, the Amended Complaint offers no factual support for Gabriel's claim that the response from ACPE Accreditation Facilitator Lindsay Antikainen was "unjust[ly] disriminatory." (Doc. 3 at 32.)  In his opposition memorandum, Gabriel explains that he is accusing the ACPE Defendants of racial discrimination because they failed to investigate the allegedly discriminatory conduct at ACPHS. (Doc. 43 at 10.)  In essence, he claims that by failing to investigate his discrimination claim, ACPE itself acted in a discriminatory manner.  Because Gabriel fails to support his charge of derivative discrimination with any facts that would indicate a plausible claim, the ACPE Defendants' motion to dismiss that claim is GRANTED.

B.   Leave to Amend

As it did with the College, the Court next considers whether it must grant leave to amend.  The Second Circuit has "repeatedly cautioned against *sua sponte* dismissal [without leave to amend] of *pro se* civil rights complaints prior to requiring the defendants to answer." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Leave may be denied where, for example, the problem with a claim "is substantive . . . better pleading will not cure it," and "[r]epleading

would thus be futile." *Cuoco*, 222 F.3d at 112.

In this case, the flaws in Gabriel's pleadings are due to a lack of adequate factual support. Keeping in mind that leave to amend should be granted where there is "any indication that a valid claim might be stated," the Court cannot conclude with certainty that even with additional facts, Gabriel will be unable to assert a plausible discrimination claim against the ACPE Defendants. Leave to amend that claim is therefore GRANTED. *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999); *see also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (remanding to give *pro se* plaintiff opportunity to amend complaint which "fails to offer more than conclusory allegations that he was discriminated against because of his race") (internal citation omitted); *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

C. Breach of Contract Claim

The breach of contract claim, however, is plainly meritless. Briefly stated, there is no basis for asserting

28

a contractual relationship between Gabriel and the ACPE
Defendants.  In response to the ACPE Defendants' motion to
dismiss the contract claim, Gabriel asserts that ACPE has "a
national and public responsibilit[y] . . . towards the
health care system in the United States of America, or in
[]other words ACPE in general has [] an agreement or
contract with the American people and the American society
in general" to ensure that "pharmacy colleges and programs"
comply with ACPE standards.  (Doc. 43 at 5.)

There is no legal support for the proposition that ACPE
has a general contract with the American people.
Correspondingly, if ACPE fails to properly enforce its own
accreditation standards, its conduct does not give rise to a
breach of contract claim by members of the general public.
Nor does ACPE's conduct create claims for breach of contract
brought by students at accredited institutions.  *See
generally Cruz Berrios v. Accreditation Council for Graduate
Medical Educ.*, 218 F. Supp 2d 140, 143 (D.P.R. 2002)
(finding no contract or quasi-contract between student and
accreditation organization).  Gabriel's breach of contract
claim against the ACPE Defendants is therefore DISMISSED
with prejudice, and without leave to amend.

D.   Request for Disciplinary Action

Gabriel's opposition memorandum asks the Court to take action against the ACPE Defendants and ACPE attorney Michael Montgomery as a result of an alleged telephone conservation between Gabriel and Montgomery.  Accepting Gabriel's depiction of the conversation as true, Montgomery asked Gabriel to voluntarily dismiss his claims, and informed Gabriel that ACPE would likely move the Court for costs if successful.  Gabriel characterizes Montgomery's statements as intimidating, and asks the Court to take disciplinary action.  The Court sees no basis for taking such action, and to the extent that Gabriel's request constitutes a motion, the motion is DENIED.

<u>Conclusion</u>

For the reasons set forth above, Defendants' motions to dismiss (Docs. 30 and 34) are GRANTED.  Gabriel's motion for leave to file a sur-reply (Doc. 47) is also GRANTED.

Gabriel's breach of contract claims against Defendants are DISMISSED.  Gabriel may file a Second Amended Complaint within 30 days of this Opinion and Order amending his claims of discrimination.  Failure to file a Second Amended Complaint within 30 days will likely result in the dismissal

of this case with prejudice.

Dated at Burlington, in the District of Vermont, this 3rd day of October, 2012.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court