```
                   UNITED STATES DISTRICT COURT
                            FOR THE
                      DISTRICT OF VERMONT

Matthew Gabriel, f/k/a         :
Matta Ghobreyal,               :
                               :
          Plaintiff,           :
                               :
     v.                        :     Case No. 2:12-CV-14
                               :
Albany College of Pharmacy     :
and Health Sciences –          :
Vermont Campus (ACPHS),        :
Professor Dorothy Pumo,        :
Ronald A. DeBellis, Dean       :
Robert Hamilton, Assistant     :
Professor Joanna Schwartz,     :
Jason Long, Melissa Long,      :
Professor Stefan Balaz,        :
President Dr. James J.         :
Gozzo, Associate Dean John     :
Denio, Dr. Peter J.            :
Cornish, Professor Gail        :
Goodman Snitkoff, Gerald       :
Katzman, Accreditation         :
Council of Pharmacy            :
Education (ACPE), Peter        :
H. Vlasses, Lindsay M.         :
Antikainen,                    :
                               :
          Defendant.           :
```

## OPINION AND ORDER
(Docs. 59, 60)

*Pro se* plaintiff Matthew Gabriel brings this action claiming that he was discriminated against while a student at the Vermont campus of the Albany College of Pharmacy and Health Sciences ("ACPHS" or "College"). His claims center on a plagiarism charge leveled against him by one of his

professors.  The charge was ultimately withdrawn, but Gabriel contends that he suffered physical, psychological, and monetary harm as a result of the incident.  In addition to his discriminations claims, Gabriel alleges negligence and breach of contract.

Defendants in the case include ACPHS, ACPHS administrators, professors, students, and General Counsel (collectively "ACPHS Defendants"), as well as the Accreditation Council for Pharmacy Education ("ACPE"), its Executive Director and Accreditation Facilitator ("ACPE Defendants").  Now before the Court are Defendants' motions to dismiss Gabriel's Second Amended Complaint ("SAC").  For the reasons set forth below, the ACPHS Defendants' motion to dismiss is GRANTED in part and DENIED in part, and the ACPE Defendants' motion to dismiss is GRANTED.

## Factual Background[1]

Gabriel was a full-time student at ACPHS from August 2009 through November 2009.  He attended classes at the ACPHS Vermont campus, which is a satellite of the primary ACPHS campus in Albany, New York.  On October 19, 2009,

---

[1] For the limited purpose of ruling on the pending motions to dismiss, the factual allegations set forth in the SAC will be accepted as true.

ACPHS Professor Dorothy Pumo asked her students, including Gabriel, to write a 450-word report on immunology based upon a lecture by Professor Gail Goodman Snitkoff.  Professor Snitkoff's lecture was presented live at the Albany campus, and via video at the Vermont campus.  Due to problems with the video feed, the Vermont class missed the first fifteen minutes of the lecture.

At the end of the class, one of Gabriel's fellow students asked "about using material from internet sources and the correct citation required" for the writing assignment.  (Doc. 58 at 3.)  Professor Pumo allegedly told the class "not to worry about it because Professor Snitkoff did not mention this," and that "there was not enough space to include citations in a 450 word report."  *Id.*[2]

Gabriel timely submitted his report by means of the school website.  A few days later, Professor Pumo asked to speak with him after class.  During the meeting, Professor Pumo informed Gabriel that he had violated the school's Honor Code by committing plagiarism in his report.  Gabriel disputed the accusation, explaining that he had not been

---

[2] Gabriel also claims that Professor Pumo failed to provide an Honor Code Statement with the assignment.  The course syllabus stated that students would be required "to honestly sign the honor code statement on all graded work."  (Doc. 58-14 at 2.)

provided proper citation methods for internet sources, and reminding Professor Pumo about her statement that references were not required.  Nonetheless, Professor Pumo informed Gabriel that she intended to file an Honor Code violation. The two discussed the matter further, and Pumo agreed to consider a re-written assignment.  At that point, Gabriel was "under the impression we had resolved his ugly matter." *Id.* at 4.

Later that day, however, Gabriel checked his email and found that Professor Pumo had contacted ACPHS Dean DeBellis and filed a formal accusation of plagiarism.  Gabriel alleges that Professor Pumo took this action with discriminatory intent, as others in the class were also accused of plagiarism, but he was the only one whom Professor Pumo chose to report.  Gabriel contends that this discrimination was based upon his national origin (Egyptian) and religion (Coptic Christian).

When Gabriel questioned Professor Pumo about plagiarism by others in the class, she conceded that there were "other offenses" but that they were "of a lesser degree."  *Id.* at 14.  With respect to the class as a whole, the assignment had been reviewed for plagiarism by means of a program

called Turnitin.  After reviewing the Turnitin report,

Professor Pumo addressed the class as follows:

> I read through the [T]urnitin report, I have not
> finished all of them, and I am <u>distressed</u> part of
> that [sic] <u>is a large number of you seemingly
> copied full sentences from other works.</u>  I am
> getting a lot of matches to extraneous papers from
> other places.  I am in no <u>mood</u> to report the
> entire class for plagiarism; that said I will do
> it if I have to.  So I am giving everybody, well
> most people anyway <u>a free pass</u> on one sentence
> copied for this paper.  <u>I am not going to write up</u>
> everybody for copying one sentence.

*Id.* at 5 (emphases in original).[3]

Gabriel refers to Professor Pumo's allowance of limited

plagiarism as the "'free pass' phenomenon," and claims that

the practice was unlawful as it resulted in punishment

against only one person.  As he states in the SAC, "based on

the 'free pass' phenomenon the charges of plagiarism should

not have been filed against the plaintiff from the

beginning, because the entire class plagiarized

unintentionally."  (Doc. 58 at 7.)  He further contends that

singling him out for punishment in a class of seventy-seven

students "represent[s] a strong discriminatory conduct," and

---

[3] According to Professor Pumo's email to Dean DeBellis, Gabriel's
Turnitin report showed 51% plagiarism from online sources.  (Doc. 58-1
at 2.)  In his SAC, Gabriel contends that he did not plagiarize, and
that he "did the assignment to the best of his knowledge according to
the limited information provided by defendant [P]rofessor Pumo on how
to do the assignment."  (Doc. 58 at 5.)

that the "'free pass' phenomenon was merely a ridiculous
reason from Professor Pumo to cover her obvious
discriminatory behavior." *Id.* at 7, 11.

Gabriel cites two other incidents involving Professor
Pumo that allegedly support his discrimination claim.  In
the first, which occurred prior to the plagiarism charge,
Professor Pumo "inhibited the Plaintiff from using the
bathroom during exam [sic] . . . and allowed everybody else
in the class to use it." *Id.* at 7 (emphasis in original).
Second, he claims that when one of his exam times conflicted
with his citizenship ceremony, Professor Pumo initially
refused to offer him a makeup date.  Although a makeup date
was ultimately set, Gabriel contends that it resulted in his
having two exams on the same day, and that after the second
exam he required medical treatment for a severe tension
headache.

When Gabriel complained to Dean DeBellis about this
treatment, he was allegedly told that he "needed to stop
complaining, and that if plaintiff kept challenging the
faculty they will do their best to flunk [him]."  *Id.* at 13.
He also alleges that Dean DeBellis pledged to discuss the
matter with Dean Hamilton "and get back to me," but failed

to follow up with Gabriel "until now." *Id.*  The SAC
contends that like Professor Pumo, Dean DeBellis was
motivated by "prejudice and discrimination." *Id.*

The plagiarism charge was considered by the College's
Honor Code Review Committee ("Committee"), comprised of
ACPHS students, professors, and administrators.  In a letter
delivered to Gabriel by Dean DeBellis in November 2009, the
Committee informed Gabriel of its conclusion that he had, in
fact, committed plagiarism, and that he would receive a
failing grade for the writing assignment.  Gabriel also
reports having had an informal meeting with committee member
Jason Long, and a formal meeting with Professor Joanna
Schwartz.  During both meetings, he was allegedly advised to
accept his punishment.  He alleges that by so advising him,
both Long and Schwartz were suggesting that "the plaintiff
cannot defend himself which represent[s] a clear oppression
and discrimination . . . ." *Id.* at 18, 19.

ACPHS officials ultimately informed Gabriel that
Professor Pumo had agreed to rescind her accusation, and
that the allegation of plagiarism was being withdrawn.  When
Gabriel requested a letter of confirmation, the request was
allegedly denied.

In November 2009, shortly after receiving the Committee's decision, Gabriel requested and was granted a medical leave from school.  The request was supported by a letter from Dr. Richard Ober, a consulting psychologist. Dr. Ober reported that Gabriel had "referred himself to this office for the treatment of a range of confusing emotional responses to his circumstances."  (Doc. 58-3 at 2.)  Dr. Ober further opined that "[d]ue to a number of factors in his life," Gabriel was affected by "significant levels of stress" that had resulted in anxiety, problems with sleep and concentration, an "inability to enjoy normal activities, appetite disturbance and consequent weight loss, worry, decreased energy, gastrointestinal disturbance and feelings of sadness and loss."  *Id.*  Dr. Ober's letter stated that "[t]hese effects are coincidental with beginning the program at [ACPHS]," that medications had not been effective, and that he therefore supported Gabriel's request for a medical leave.  *Id.*

Because of his experience at the Vermont campus, Gabriel asked to be transferred to the Albany campus.  At first, he did not receive any response from Dean DeBellis about his request.  When he did reach Dean DeBellis by

telephone, the request was denied without explanation.  Dean
DeBellis denied a second request by letter, again without
explanation.  Gabriel reports that he has since "decided not
to go to Vermont again and plaintiff has enrolled in a
different school to complete my pharmacy studies which has
cost me time and money."  (Doc. 58 at 25.)

On August 20, 2010, Gabriel complained to ACPE and
ACPHS officials about how he had been treated.  The ACPE
response, authored by Defendant Lindsay Antikainen, informed
Gabriel that "[a]fter our review of your complaint along
with the information provided to us by the Dean of the
College of Pharmacy, it was determined that no accreditation
standards have been violated in this instance."  (Doc. 58-19
at 2.)  Gabriel contends that several accreditation
standards were, in fact, violated.  He also alleges that
ACPE accredited the Vermont campus prematurely, a result of
which was the lack of a campus writing center.  Gabriel
claims that if a writing center had been available, his
writing assignment could have been reviewed prior to its
submission to Professor Pumo.  The claims against the ACPE
Defendants are brought pursuant to 42 U.S.C. § 1981 and
common law negligence.

In addition to his discrimination claims, Gabriel is alleging breach of the College's Enrollment Confirmation Form.  The Form states that the enrolling student agrees to abide by the College's Honor Code.  Gabriel contends that the Form "works and functions both ways," and embodies an agreement by the College to abide by the Honor Code as well. (Doc. 58 at 15.)  The alleged violations of the Enrollment Form, and through it the Honor Code, included: failure to provide Gabriel with written notice of the charge against him; failure to make an effort to mediate the issue; failure to provide Gabriel with an advisor; failure to provide a hearing; and failure to notify Gabriel of his right to appeal the Committee's decision.  *Id.* at 26-28.  As a result of the alleged breach of the Enrollment Confirmation Form, Gabriel claims to have lost one academic year, resulting in "the loss of [a] substantial amount of money between tuition and a year of loss of wages," as well as "physiological and psychological damages."  *Id.* at 15.

Gabriel is seeking damages in the amount of $1,135,330. Of this amount, the majority is to compensate for alleged psychological harm.  Other claimed damages include ACPHS tuition, school fees, living expenses, and lost wages.

<u>Procedural History</u>

Gabriel originally brought his claims under "Title VII of the Civil Rights Act of 1964, as amended, and the applicable laws of the State of Vermont." (Doc. 3 at 36.) Prior to coming to this Court, he filed a similar lawsuit in the United District Court for the District of Massachusetts. That Complaint was dismissed for improper venue. (Doc. 33-7.) In its order of dismissal, the court also concluded that Gabriel's Title VII claim was "not viable as a matter of law" because he did not claim to be an employee of the College. *Id.* at 2 n.3.

Gabriel subsequently filed the instant case, again bringing claims under Title VII, as well as a state law breach of contract claim. Defendants moved to dismiss, and the Court granted the motions but allowed Gabriel leave to amend. Specifically, the Court dismissed the Title VII claims, but giving Gabriel's *pro se* Complaint the required liberal reading, stated that Gabriel "may be trying to raise civil rights claims under federal statutes other than Title VII, such at Title VI of the Civil Rights Act of 1964, or 42 U.S.C. § 1981." (Doc. 51 at 14.) The Court also found that Gabriel's pleadings did not allege a plausible claim of

11

discrimination, and that his breach of contract claim was meritless.  Leave to amend was granted only with respect to the discrimination claims.

Gabriel has now filed his SAC, asserting discrimination claims under Title VI and 42 U.S.C. § 1981.  He also re-asserts a breach of contract claim, as well as negligence claims against the ACPE Defendants.  Defendants have again moved to dismiss for failure to state a claim.

<u>Discussion</u>

I.  <u>Legal Standard</u>

Defendants have moved to dismiss Gabriel's claims pursuant to Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.*
Accordingly, a plaintiff is required to support his claims
with sufficient factual allegations to show "more than a
sheer possibility that a defendant has acted unlawfully."
*Id.* "Where a complaint pleads facts that are merely
consistent with a defendant's liability, it stops short of
the line between possibility and plausibility of entitlement
to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557)
(internal quotation marks omitted).

II. <u>ACPHS Defendants' Motion to Dismiss</u>

    A.  Discrimination Claims

    As noted above, Gabriel brings his discrimination
claims against the ACPHS Defendants pursuant to Title VI and
42 U.S.C. § 1981. Title VI provides that "[n]o person in
the United States shall, on the ground of race, color, or
national origin, be excluded from participation in, be
denied the benefits of, or be subjected to discrimination
under any program or activity receiving Federal financial
assistance." 42 U.S.C. § 2000d. Section 1981 provides,
*inter alia*, that "[a]ll persons within the jurisdiction of
the United States shall have the same right in every State
and Territory to make and enforce contracts . . . and to the

full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).[4]  In order to ultimately prevail under either statute, Gabriel must demonstrate that a defendant (1) discriminated against him on the basis of race, (2) that the discrimination was intentional, and (3) that the discrimination was a substantial or motivating factor for the defendant's actions. *See Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) (citations and internal quotation marks omitted).

To survive a motion to dismiss on a claim of racial animus, the Second Circuit has held that a plaintiff "need not allege 'specific facts establishing a *prima facie* case of discrimination.'" *Boykin v KeyCorp*, 521 F.3d 202, 212 (2d Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  In *Swierkiewicz*, the Supreme Court held that a discrimination complaint "easily satisfie[d] the requirements of Rule 8(a) because it [gave] respondent fair

---

[4] Section 1981 "applies to private as well as state actors, including independent academic institutions." *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994).  Title VI applies to private suits against private recipients of federal funds. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 711 n.48 (1979).  The Court will assume for present purposes that ACPHS is the recipient of federal funds.

notice of the basis for petitioner's claims" by "alleg[ing] that he had been terminated on account of his national origin[,] . . . detail[ing] the events leading to his termination, provid[ing] relevant dates, and includ[ing] the ages and nationalities of at least some of the relevant persons involved with his termination." *Id.* at 514.  For Title VII cases, this remains the pleading threshold in the Second Circuit.  *See Boykin*, 521 F.3d at 213.[5]  As Title VI and Title VII cases employ the same analytical framework, the same pleading standard applies here.  *See J.E. ex rel. Edwards v. Ctr. Moriches Union Free School Dist.*, 898 F. Supp. 2d 516, 557 (E.D.N.Y. 2012); *see also Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 92 (2d Cir. 2006) (noting that *Swierkiewicz* standard applies to all claims that use "the *McDonnell Douglass* [burden-shifting]

---

[5] *But see Schwab v. Smalls*, 435 F. App'x 37, 40 (2d Cir. July 27, 2011) (unpublished) (noting that "[q]uestions have been raised ... as to *Swierkiewicz*'s continued viability in light of *Twombly* and *Iqbal*.").  In its previous Opinion and Order, the Court relied in part upon the pleading standards set forth in *Yusuf.*  Whether those standards remain valid after *Swierkewicz* is a matter of debate. Indeed, Judge Murtha noted in 2009 that "some question arose after *Swierkiewicz* as to whether" *Yusuf* remained good law, and that "*Swierkiewicz* itself has a questionable status after *Twombly* . . . and especially after *Iqbal*."  *Brown v. Castleton State College*, 663 F. Supp. 2d 392, 403 (D. Vt. 2009).  Given the factual similarities of this case to the pleadings presented in *Boykin*, discussed below, the Court will follow the Second Circuit's reasoning, and standard, in that case.

framework").

The SAC in this case presents a close question at the Rule 12 stage.  The Court previously concluded that Gabriel's allegations did not support an inference of discriminatory animus.  His SAC emphasizes that certain actions were taken against him *because* of his national origin and religion, and that a totality of circumstances strongly suggests discrimination.  He also now alleges causes of action under Title VI and Section 1981 that, unlike his previous Title VII claim, arguably apply in this case.

As to the underlying facts, the Court notes that in a racial animus case, intent may be difficult to establish as "[t]here will seldom be 'eyewitness' testimony as to the [defendants'] mental processes."  *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).  Moreover, the Second Circuit has articulated a comparator test, which allows a plaintiff to establish an inference of discrimination by comparing his or her treatment to the treatment of a person who is similarly situated to the plaintiff in all material respects.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also*

16

*Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (holding that "a showing that the employer treated plaintiff less favorably than a similarly situated employee outside of his protected group . . . is a recognized method for raising an inference of discrimination for purposes of making out a *prima facie* case."). In this case, Gabriel asserts repeatedly in his SAC that he was "singled out" for special treatment, and that until Defendants show otherwise, the Court may infer that similarly situated students were treated more favorably. The Court finds these allegations of intentional "singling out" to be sufficient for an inference of discrimination at the pleading stage.

Furthermore, *Boykin* demonstrates that a plaintiff in a discrimination case need not provide factual *evidence* of discrimination in his Complaint. In *Boykin*, the district court had concluded that "[i]t [was] not enough for Plaintiff to simply state that she is a black woman who was denied a loan." 521 F.3d at 214 (internal quotation omitted). The Second Circuit disagreed, holding that complaints of racial discrimination are "sufficiently pleaded when the complaint state[s] simply that plaintiffs 'are African-Americans, describes defendants' actions in

detail, and alleges that defendants selected [plaintiffs]

for maltreatment 'solely because of their color.'"  *Boykin*,

521 F.3d at 215 (quoting *Phillip v. Univ. of Rochester*, 316

F.3d 291, 298 (2d Cir. 2003)); *see also DiPetto v. U.S.

Postal Serv.*, 383 F. App'x 102 (2d Cir. 2010); *Morales v.

Long Island Rail Road Co.*, No. 09-CV-8714, 2010 WL 1948606,

at *3-4 (S.D.N.Y. May 14, 2010).

   In this case, the SAC gives Defendants notice of the

claim and sets forth sufficiently detailed allegations to

describe the basis for a discrimination claim.  As the

Second Circuit concluded in *Boykin*:

> In sum, Boykin's allegations, taken as true,
> indicate the possibility of discrimination and
> thus present a plausible claim of disparate
> treatment.  The complaint gives [defendant] notice
> of Boykin's claim and the grounds upon it rests
> that is sufficient to satisfy Rule 8(a).  We
> emphasize that we are expressing no opinion
> regarding the merits of Boykin's claim.  And that
> is precisely the point: even after *Twombly*,
> dismissal of a *pro se* claim as insufficiently
> pleaded is appropriate only in the most
> unsustainable of cases.  The merits of a claim
> like Boykin's, which on its face presents a
> plausible allegation of disparate treatment,
> should be tested on summary judgment.

*Id.* at 215-16.  The same conclusion may be reached with

respect to Gabriel's discrimination claims.  Indeed,

Defendants are free to test the sufficiency of his claims at

summary judgment, and the Court is making no suggestion at this time with regard to the merits of those claims.  At the pleading stage, however, the Court finds that Gabriel's allegations are sufficient, and the ACPHS Defendants' motion to dismiss his discrimination claims is DENIED.

B.  Breach of Contract Claim

Gabriel also asserts a breach of contract claim, alleging that the College's Enrollment Confirmation Form ("Form") constituted a contract.  The Form, which is signed by Gabriel, states in relevant part that he agreed "to abide by the rules and regulations of [ACPHS] as presently published in the Student Handbook and Catalog."  (Doc. 58-13 at 2.)  Those "rules and regulations" included the College's Honor Code.  Gabriel claims that the Enrollment Confirmation Form was a two-way contract, and that Honor Code violations by Defendants were violations of that contract.

In its prior Opinion and Order, the Court dismissed Gabriel's breach of contract claim without leave to amend. Specifically, the Court found that Gabriel's allegations of Honor Code violations were not viable under a breach of contract theory.[6]  The SAC now reasserts the same

---

[6] Gabriel previously asserted that the Honor Code itself was a contract, and that Defendants' failure to abide by the terms of the

allegations, using the Enrollment Confirmation Form as the contract that allegedly binds the College to the terms of the Honor Code.  Without reaching the question of whether the Form constituted a two-way, enforceable contract, the Court finds that the fundamental flaws in Gabriel's contract claim are unchanged.  The ACPHS Defendants' motion to dismiss the breach of contract claim is therefore GRANTED.

III.  <u>ACPE Defendants' Motion to Dismiss</u>

The ACPE Defendants have also moved to dismiss under Rule 12(b)(6).  The claims against the ACPE Defendants are (1) that they accredited the Vermont Campus prematurely, and (2) that their response to Gabriel's complaint was discriminatory.  Gabriel further claims that the ACPE Defendants' actions constituted negligence.

A.  Discrimination Claim

---

Honor Code, specifically certain procedural aspects relating the Honor Code Review Committee, constituted breach.  The Court rejected the claim, finding first that because the plagiarism charge was ultimately withdrawn, "and Gabriel was welcomed to return to school with a clean record . . . any errors in the Committee's procedure . . . were harmless."  (Doc. 51 at 23.)  The Court also noted that Gabriel would be unable to obtain damages under Vermont law since, even accepting his allegations as true, "the damages sought by Gabriel as a result of the Committee's initially minor, and ultimately non-existent, sanction could not have been foreseeable."  *Id.* at 25.  Finally, the Court noted the Honor Code's deviation provision, which allowed invalidation on the basis of procedural errors only in cases of "significant prejudice," and concluded that this case (where the penalty was ultimately withdrawn) could not qualify.  *Id.*

Gabriel claims that ACPE handled his complaint "in a discriminatory fashion based on the plaintiff['s] national origin of being Coptic Egyptian Christian American in violation to [sic] 42 U.S.C. § 1981(a)."  In moving for dismissal, the ACPE Defendant contend that Gabriel has failed to state a Section 1981 claim because he had no contractual relationship with ACPE.

Section 1981 states, in relevant part, that "all persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  The statute defines "mak[ing] and enforc[ing] contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Consequently, any claim brought under § 1981 for discrimination in the making or enforcement of contracts "must initially identify an impaired contractual relationship . . . under which the plaintiff has rights."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  "Absent the requirement that the plaintiff himself must have rights under the contractual

relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to *somebody's* contract. [The Supreme Court has] never read the statute in this unbounded — or rather, *peculiarly* bounded — way." *Id.* (emphases in original).

In his prior pleadings, Gabriel sought to bring a breach of contract claim against ACPE, arguing that ACPE has "a national and public responsibilit[y] . . . towards the health care system in the United States of America, or in []other words ACPE in general has [] an agreement or contract with the American people and the American society in general" to ensure that "pharmacy colleges and programs" comply with ACPE standards. (Doc. 43 at 5.) The Court rejected this claim, finding that "[t]here is no legal support for the proposition that ACPE has a general contract with the American people. Correspondingly, if ACPE fails to properly enforce its own accreditation standards, its conduct does not give rise to a breach of contract claim by members of the general public." (Doc. 51 at 29.) The Court further concluded that ACPE's activities do not "create

claims for breach of contract brought by students at accredited institutions." *Id.* (citing *Cruz Berrios v. Accreditation Council for Graduate Medical Educ.*, 218 F. Supp 2d 140, 143 (D.P.R. 2002) (finding no contract or quasi-contract between student and accreditation organization)).

The SAC does not set forth any new basis for finding a contractual relationship between Gabriel and the ACPE Defendants.  In the absence of a contractual relationship with ACPE, Gabriel cannot raise a Section 1981 claim of discrimination.  The motion to dismiss Gabriel's discrimination claim against the ACPE Defendants is therefore GRANTED.

B.   Negligence Claims

The SAC also claims that the ACPE Defendants are liable for negligence with respect to the handling of his complaint, and in their alleged failure to enforce ACPE standards.  Under Vermont law, a negligence claims requires: a legal duty; a breach of that duty; actual injury; and a causal link between the breach and the injury.  *See Zukatis v. Perry*, 165 Vt. 298, 301 (1996).  Accordingly, in order to state a viable negligence claim, Gabriel must first assert

23

an enforceable duty of care owed to him by the ACPE
Defendants.

The Ninth Circuit has declined to find that accrediting
agencies owe a tort law duty of care to students who attend
schools accredited by those agencies.  *See Keams v. Tempe
Tech. Institute, Inc.*, 110 F.3d 44, 47 (9th Cir. 1997)
(noting that "appellants are unable to identify a single
decision wherein any court in the United States has held
that accrediting agencies . . . owe a tort law duty to
students").  Similarly, the First Circuit has stated that

> [w]e very much doubt the existence of a cause of
> action for negligent accreditation on behalf of
> third parties. . . .  Our skepticism is heightened
> by the strong policy arguments that militate
> against endowing ill-served students of accredited
> schools with a means to challenge the decisions of
> accrediting agencies.  These policy concerns
> include the lack of a satisfactory standard of
> care by which to evaluate educators' professional
> judgments and the patent undesirability of having
> courts attempt to assess the efficacy of the
> operations of academic institutions.

*Ambrose v. New England Ass'n of Schools and Colleges, Inc.*,
252 F.3d 488, 499 (1st Cir. 2010).  While there is no
Vermont case law directly on point, the Court agrees with
these Circuit courts on the duty of care question.
Accordingly, the Court finds that Gabriel has failed to
state a viable claim for relief against the ACPE Defendants

on a theory of general negligence.

The ACPE Defendants also propose that Gabriel may be bringing a claim of negligent infliction of emotional distress, as the SAC alleges psychological harm as a result of their alleges actions.  A claim of negligent infliction of emotional distress, however, "is premised on a finding of negligence," including a duty of care.  *Taylor v. Fletcher Allen Health Care*, 2012 VT 86, ¶ 9, __ Vt. __, 60 A.3d 646, 651-52.  As discussed previously, the Court finds that the ACPE Defendants had no such duty in this case.  Their motion to dismiss is therefore GRANTED in its entirety.

Conclusion

For the reasons set forth above, the motion to dismiss filed by the ACPHS Defendants (Doc. 60) is GRANTED in part and DENIED in part.  The motion to dismiss filed by the ACPE Defendants (Doc. 59) is GRANTED.  All claims against Defendants ACPE, Lindsay Antikainen and Peter Vlasses are DISMISSED.

Dated at Burlington, in the District of Vermont, this 16th day of August, 2013.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court